

translations@geotext.com
www.geotext.com

STATE OF NEW YORK )
)
) ss
COUNTY OF NEW YORK )

**<u>CERTIFICATION</u>**

This is to certify that the attached translation is, to the best of my knowledge and belief, a true

and accurate translation from Russian into English of the attached Declaration of Professor

Mikhail Zinovyevich Shvarts, executed on October 29, 2018.

Laura Musich, Managing Editor
Geotext Translations, Inc.

Sworn to and subscribed before me

this __29__ day of __October__, 20 __18__.

JEFFREY AARON CURETON
NOTARY PUBLIC-STATE OF NEW YORK
No. 01CU6169789
Qualified in New York County
My Commission Expires September 23, 2019

New York
t: +1.212.631.7432

London
t: +44.20.7553.4100

Washington, D.C.
t: +1.202.828.1267

Paris
t: +33.1.42.68.51.47

Chicago
t: +1.312.242.3756

Stockholm
t: +46.8.463.11.87

Houston
t: +1.713.353.3909

Frankfurt
t: +49.69.7593.8434

San Francisco
t: +1.415.576.9500

Hong Kong
t: +852.2159.9143

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

———————————————————————X

*In re:* APPLICATION OF HULLEY        :
ENTERPRISES LTD., YUKOS             :
UNIVERSAL LTD., and VETERAN
PETROLEUM LTD., FOR AN ORDER        :
PURSUANT TO 28 U.S.C. § 1782        :

TO CONDUCT DISCOVERY FOR USE        :        Misc. Action No. 18-mc-435
IN A FOREIGN PROCEEDING
                                     :

                                     :

                                     :

                                     :

                                     :

                                     :

———————————————————————— X

# DECLARATION
# OF PROFESSOR MIKHAIL ZINOVYEVICH SCHWARTS

I, Professor MIKHAIL ZINOVYEVICH SCHWARTS, hereby declare, pursuant to
28 U.S.C. § 1746:

1. Since 1995, I have been admitted to practice law in Russia, and currently
practice as an advokat. I am a professor and Acting Chairman of the Civil Procedural
Law Department at Saint-Petersburg State University. I lecture on civil and
commercial proceedings, administrative legal proceedings, enforcement
proceedings and notary law. I am also the Managing Partner of the legal bureau
"Schwarts and Partners." In my private practice I focus on complex civil and

commercial court cases as well as consulting on various issues of Russian law, including procedural law. I have served as an expert on Russian law before Russia's highest judicial authorities and have frequently prepared expert opinions for Russian and foreign proceedings. I am a member of the Scientific Advisory Board to the Supreme Court of the Russian Federation. My CV is presented in Exhibit 1.

2. I have prepared this Declaration in connection with the applications filed in the United States District Courts for the Southern District of New York and the Eastern District of Pennsylvania by ex-shareholders of YUKOS, specifically Hulley Enterprises Ltd., Yukos Universal Ltd. and Veteran Petroleum Ltd. (collectively the "**Petitioners**") pursuant to 28 U.S.C. § 1782 for leave to serve subpoenas on White & Case LLP;[1]  Hugh Verrier, the Chairman of White & Case and a Partner in its New York office; and Alexandra Rutstein, a Russian lawyer who worked in the Moscow office of White & Case. The Petitioners' subpoenas seek evidence for use in connection with Veteran Petroleum Limited ("**Veteran**"), Yukos Universal Limited ("**Yukos Ltd.**"), Hulley Enterprises Limited ("**Hulley**") v. The Russian Federation, Case No. 200.197.079/01, which is currently before the Hague Court of Appeal. To the best of my knowledge, I am independent in relation to the participants of those proceedings. The conclusions expressed in this Declaration are based solely on my personal knowledge and experience. My compensation does not depend on the content of this opinion or the outcome of the proceedings. I have been advised by Counsel that none of Hulley, Veteran or Yukos Ltd. were clients of White & Case LLP and Petitioners seek disclosure of documents of other identified clients of White & Case LLP.

3. I have reviewed the proposed subpoenas, the order to search the offices of White & Case dated May 16, 2007, the record of the search conducted at the offices of White & Case dated May 30, 2007, and the legal opinion and Declaration of Dr. Ilia V. Rachkov, which were submitted to the aforementioned courts by the

---

[1] It is my understanding that White & Case LLC is a separate but affiliated entity that operates an office in Moscow. In this declaration I refer to the various White & Case entities simply as "White & Case," without intending to suggest that the corporate form of the entities is devoid of meaning.

Petitioners in support of their applications. I was asked to comment on the following matters in accordance Russian law:

*(a) whether lawyers that do not have advokat status have an obligation to maintain the confidentiality of files related to the work performed for their former clients from disclosure to non-clients;

*(b) whether the lawyer's confidentiality obligation applies to legal work performed in connection with transactional or advisory matters as well as to representation in litigation or arbitration;

*(c) whether the confidentiality obligations of lawyers owed to former clients prohibit a lawyer called by non-clients to give testimony from testifying as to information learned from the former client or the nature and content of the work performed by the lawyer for the former client;

*(d) whether communications between former White & Case clients and White & Case and its lawyers, including Mr. Verrier and Ms. Rutstein, and documents generated by lawyers for such firm in connection with their work for former clients are protected from disclosure to other non-clients under Russian law.

## I.  GENERAL INFORMATION ABOUT THE RUSSIAN LEGAL SYSTEM

4. The Russian legal system is not a common law system; it consists of recorded national laws and international legal obligations. Article 15 of the Constitution establishes that this legal system includes the Constitution, laws and by-laws, as well as generally recognized principles, norms of international law and international treaties of the Russian Federation. The laws in Russia have their own hierarchy, which is as follows: the Constitution, federal constitutional laws and then federal laws. Federal laws include, *inter alia*, the Civil Code and the Civil Procedural Code, the Criminal Code and the Code of Administrative Offences.  This principle is reflected throughout the text of the 1993 Constitution, specifically in articles 15(2), 90(3), and 115(1). This hierarchy is premised upon the doctrine of separation

of powers (reflected in article 10), the supremacy of federal laws (reflected in article 4(2)), and the principle of the democratic, rule-of-law state (reflected in article 1(1)). This is not a system based on the principle of *stare decisis*.

5. The Russian court system consists of courts of general jurisdiction (which settle criminal and civil cases not associated with commercial activity) and arbitration (economic) courts, which deal mainly with settling economic disputes and other cases arising from relations between entrepreneurs and legal entities. The Supreme Court is the highest court in the Russian court system. Procedural relations within the framework of civil court disputes are governed by the Arbitration Procedural Code (the "**APC RF**") and the Civil Procedural Code (the "**CPC RF**")[2].

6. The Constitutional Court is yet another supreme court body that resolves disputes on the compliance of Russian legislation with the Constitution. The decisions rendered by the Constitutional Court of the Russian Federation are binding on all Russian courts.

7. In this Declaration, I from time to time comment or refer to decisions by Russian courts in certain court cases and publications on issues dealt with herein[3].

## II. RUSSIAN LAWS GOVERNING THE LEGAL STATUS OF INFORMATION RECEIVED BY A LAWYER IN CONNECTION WITH PROVISION OF LEGAL SERVICES

### A. Russian Law Provides Immunity from Testimony to Any Person Who Represents a Party in Legal Proceedings, Regardless of Whether They Have Advokat Status

8. The Russian Procedural Law directly and unambiguously prohibits questioning any person acting as a "representative" in civil or other proceedings about any circumstances that became known to them in connection with the performance of their duties as representatives (CPC RF Article 69(3), clause 1 and

---

[2] A copy of the APC RF articles quoted in this Declaration is enclosed as <u>Exhibit 2</u>. A copy of the CPC RF articles quoted in this Declaration is enclosed as <u>Exhibit 3.</u>

[3] Since the issues arising inthis case relate to commercial entities, I pay specific attention to the proceedings and practice of the Russian arbitration courts, making seldom references to the practice of courts of general jurisdiction.

APC RF Article 56(5)). Specifically, APC RF Article 56(5) states that certain categories of individuals cannot be questioned as witnesses, among them, "representatives in civil or other cases, regarding circumstances of which they became aware in connection with performing their duties as representatives." The CPC contains a similar rule and prohibits questioning representatives as witnesses in civil proceedings or administrative cases about circumstances that have become known to them in connection with the performance of their duties as representatives. These provisions of the two procedural codes are almost identical.

It is important to understand that in civil and arbitration proceedings in the Russian Federation any legally capable person, including a person who is qualified as a lawyer, possessing the necessary authority (CPC RF Article 49, APC RF Article 60) may be a representative of a person taking part in the proceeding; and there is no requirement that the representative have post-secondary legal education or attorney at law status to do so.[4]

For the purpose of granting the immunity envisaged in CPC RF Article 69(3), clause 1, or APC RF Article 56(5), it is only necessary that a given person fulfill the functions of a *legal representative* in a civil or any other case.

9. It follows from the aforementioned provisions that the witness immunity envisaged by the procedural codes applies not only to advokats but to any other person acting as a legal representative.

Thus, the confidentiality standard acknowledged by law applies to communication between any legal representative having proper authority and its client, and not only to advokat-client communications.

10. This immunity is designed to protect the confidentiality of communication between a legal representative and a client; and it applies to oral testimony as well as to documents and written communications. This opinion is well supported in law.

---

[4] In order to obtain the status of advokat and be admitted to the bar, a lawyer must have obtained post-secondary legal education or an academic degree in law, work experience in the specialty for at least two years or an internship in an advokat firm, and is required to pass a special examination. In practice, the primary difference between the two categories is that only advokat can represent clients in criminal matters (Article 9(1) of the Law "On the legal profession and advocacy in the Russian Federation").

11. The term "testify" stipulated by the APC RF and CPC RF is identical with the term denoted by the Constitution of the Russian Federation and applies to any communication between representatives and clients. This is consistent with the findings of the Constitutional Court applicable to the provision of testimony that the right against self-incrimination includes the provision of documents and other information.[5]

12. Consequently, an express prohibition on disclosure of documents containing certain information received within the course of advokat-client communication applies to any lawyer, including those not admitted to the bar (i.e., those who are not advokats). In other words, the witness immunity of a lawyer rendering legal services includes not only a prohibition on being required to give testimony in a pending court hearing, but also prohibits third persons from demanding any objects, particularly documents, electronic records, and audio and video recordings, containing information entrusted to the legal representative in connection with the undertaking of an assignment to provide legal services.

This claim is supported by the following:

12.1. As noted by the Constitutional Court of the Russian Federation, confidentiality is an integral element of the right to receive legal assistance as guaranteed by the Constitution of the Russian Federation.

12.2. The Constitutional Court has also explicitly stated that one may not arbitrarily distinguish between advokats and lawyers not possessing such status, and disagreed with the statement that only attorneys may represent legal entities in the commercial courts.[6]

---

[5] Resolution #6-P of the Constitutional Court of the Russian Federation, dated 04/25/2001 (Exhibit 4). This prohibition is provided for in article 51 of the Constitution of the Russian Federation: "No one shall be obliged to give evidence incriminating themselves, their husband and wife and close relatives, the range of whom is determined by federal law" (Exhibit 5).

[6] Resolution #15-P of the Constitutional Court of the Russian Federation, dated 07/16/2004 (Exhibit 6). See also Finding #439-O of the Constitutional Court of the Russian Federation, dated 11/08/2005 (Exhibit 7) (noting that advokat-client confidentiality is an integral part of the right to receive legal assistance in Russia). In addition, Article 6 of the Code of Professional Ethics of Advokats (Exhibit 8) stipulates that not only information received by an attorney from a client constitutes a client-attorney privilege. In fact, any information about the client which became known to an advokat within the process of legal assistance, all of the advokat's actions in the case, and the mere fact of the client contacting an advokat are covered by advokat-client privilege.

If the law allows non-advokats to render legal assistance, including litigating court cases as representatives, then the legal status of a client that has chosen such representative should not differ from the legal status of those citizens and companies that entrusted their interests to advokats. Any conclusion to the contrary would violate: (a) the prohibition on introducing differences in legal status between persons who belong to the same category, without an objective and reasonable justification (known as the prohibition on distinctions between persons in identical or similar situations), which has been repeatedly affirmed by the Constitutional Court of the Russian Federation (see e.g. Resolution #1-P of the Constitutional Court of the Russian Federation "On the case concerning constitutional review of Article 43(6) of the Federal Law 'On police' in connection with the claim filed by P.F. Yukhimenko"[7] dated February 10, 2015); (b) the requirement for fair treatment of legal representatives and prohibition on attaching privileged status to the attorneys over other legal representatives in private practice, as set forth in Resolution #15-P of the Constitutional Court of the Russian Federation "On the case concerning constitutional review of Article 59(5) of the Arbitration Procedural Code of the Russian Federation in connection with the requests of the State Assembly (Qurieltai) of the Republic of Bashkortostan, the Governor of Yaroslav Oblast, the Krasnoyarsk Krai Commercial Court, and complaints from several organizations and citizens" dated July 16, 2004 (clause 4).

**B. The Protection of Confidentiality Provided by Russian Law Applies to Any Type of Legal Services**

13. The confidentiality of lawyer-client communications applies to all forms of lawyer representation, not just those in civil or commercial court proceedings. And, as explained above, it protects client files from disclosure to persons other than the clients, as well as providing testimonial immunity.

14. The protections for confidential information embodied in Article 8 of the Federal Law "On the legal profession and advocacy in the Russian Federation" apply to "any information associated with the provision of legal assistance." This encompasses any information received by the legal service provider, whether while preparing court documents or providing legal services not associated with court proceedings.

---

[7] Resolution of the Constitutional Court of the Russian Federation dated 10.02.2015 No. 1-P (Exhibit 9)

In light of the conclusions drawn by the Constitutional Court regarding the equality of advokats and lawyers without advokat status, within the framework of private disputes, the immunity of a *representative* envisaged by the APC RF and CPC RF must be applied to all recommendations and consultations associated with rendering legal services.

Therefore, for the purposes of Article 56(5) of the APC RF and Article 69(3) of CPC RF, the work of a "representative" is not confined to participation in court hearings on behalf of clients. See decision of Pervomayiskiy District Court of the city of Novosibirsk, dated 02/19/2015 in case No. 2-17/2015 (Exhibit 10) (providing the immunity of a representative to a person who did not appear in court but was involved in preparing the statement of claim). See also Comments on the Arbitration Procedural Code of the Russian Federation (article by article) (ed. V.V. Yarkova) (3rd edition, 2011), comments on Article 56(5) (Exhibit 11) (which entails that the same applies in the context of commercial proceedings).

15. I am not aware of a single civil proceeding during which a court has made a decision - at the request of a non-client – to demand the production of written records, including client communications relating to representing a current or former client in a dispute or providing other legal assistance.

16. I am not aware of any widely publicized case in which an external legal counsel from a foreign law firm was summoned by a non-client to give testimony against the client's wishes, or where such counsel was forced to present to a non-client documents associated with representing the clients' interests in a civil proceeding or rendering legal assistance.

17. Dr. Rachkov asserts that "White & Case itself conceded that advokat-client privilege does not apply to the documents sought here" when the law firm disclosed documents to government investigators "without demanding a court order" in May 2007.

This is perhaps correct, but is entirely irrelevant in this case. As explained above, "advokat-client privilege" is not the only protection for the confidentiality of information and communications with clients by a duly authorized representative.

8

White & Case may not have considered itself to be a "formation of attorneys" eligible to demand a court order under Article 8(3) of the Federal Law "On the legal profession and advocacy in the Russian Federation." But this does not mean that White & Case was not comprised of duly authorized legal representatives eligible for the separate type of lawyer's immunity envisaged in CPC RF Article 69(3), clause 1, and APC RF Article 56(5).

## III. THE DOCUMENTS SOUGHT MAY BE SUBJECT TO PROTECTION UNDER RUSSIAN LAW

18. Contrary to the conclusions of Dr. Rachkov in his Declaration, the advokat-client privilege applies to and, in my view, protects from disclosure all communications between legal representatives and their clients that meet the requirements for such protection.

The contrary opinions expressed by Dr. Rachkov are not correct for the following reasons, among others.

A) Confidentiality is the privilege of the client, not the lawyer.

B) The Constitutional Court has on numerous occasions highlighted the prohibition on introducing any differences between advokats and other legal representatives that cannot be reasonably and objectively justified.

C) The Constitutional Court has unequivocally stated that the obligation of the state to procure for its citizens qualified legal assistance requires the creation of "proper conditions for the citizens to exercise this constitutional right, and for the persons rendering legal assistance, *including advokats*, to carry out their activities effectively."

## IV. RUSSIAN LAW ALSO RECOGNIZES CONTRACTUAL CONFIDENTIALITY

19. Russian law recognizes and enforces confidentiality clauses contained in legal services contracts.[8]

20. Federal Law 149-FZ, dated July 27, 2006, "On information, information technologies and protection of information" regulates the rights to access the relevant information. This Law, *inter alia*, establishes the definition of "confidential information," and classifies information based on the category of access, namely, publicly available information, information the access to which is restricted by federal laws (information with limited access), and other information.

Dr. Rachkov incorrectly asserts that these protections apply only to information that rises to the level of trade secrets and the like. Article 9 of this Law[9] deals with limitations on access to information. This article, *inter alia*, establishes that any information received by citizens (natural persons) in the course of performing their professional obligations, or by organizations while carrying out certain types of business activities (professional secrets) will be subject to protection if the obligations on keeping information confidentiality are imposed on such persons under federal law (clause 5). This law applies to information in any form, whether communicated in writing or orally.[10]

21. Dr. Rachkov argues that the courts have authority to order the production of confidential information that is contractually protected (clause 17 of Dr. Rachkov's Declaration). But the case he cites involves production from a party. White & Case is not an interested party; it is a law firm bound by contractual confidentiality obligations. And, as I will explain in the next section, Russian courts impose a high burden on the applications for discovery to require provision of documents by an interested party.

---

[8] See, for example, Russian Civil Code Article 307; see also Articles 4, 154, 309, 422 (Exhibit 12).

[9] A copy of Article 9 of the RF Law "On information, information technologies and protection of information" is enclosed in Exhibit 13.

[10] See also articles 2, 5(3), 6(1), 6(3), 6(4)(1) and 6(4)(3) of the RF Law "On information, information technologies and protection of information" (Exhibit 14).

## V. CIVIL PROCEDURAL LAW DOES NOT PERMIT DISCLOSURE REQUESTS SIMILAR TO THE PETITIONERS' SUBPOENAS

22. As Russia is a member of the Romano-Germanic family of legal systems, it does not permit wide discovery. On the contrary, a party must prove the circumstances that justify a request for documents from an adverse party.

22. There are a number of requirements for such requests set out in the law. The confidentiality of lawyer-client relations (be it in the form of advokat-client privilege or a representative's immunity from testimony), considered above, is one such requirement. There are others; for example, Russian law provides for a production order only where the application specifically links the evidence sought to particular issues relevant to the case (APC RF Article 67).

24. In addition, Russian courts require that a party requesting evidence identify it in the request in detail. Russian law does not tolerate fishing expeditions: the court will dismiss a request for production based on a speculation that some document exists that may prove particular facts that the requesting party hopes to establish.[11]

25. Due to the limitations described above, production of evidence is rare in Russian court practice.[12] According to official statistics published by the Russian Supreme Court, in 2015-2016 combined, commercial courts considered 3,102,789

---

[11] Resolution of the Ninth Arbitrazh Court of Appeal, dated November 30, 2011, in case No. A40-47475/11-162-263 (Exhibit 15).

[12] Certain courts have held that a party may not seek document production from the opposing party, since this would violate the adversarial principle and the duty of each party to independently prove the circumstances it cites.

cases in total and issued only 653 rulings imposing penalties for failure to disclose evidence.[13]

26. In my extensive experience studying and practicing Russian civil and commercial procedure rules, I believe that based on Russian law no Russian court would order production of the documents requested by the Petitioners. I also believe that the limited nature of discovery as it has developed until now in Russian civil litigation and the current state of Russian professional secrecy rules are interdependent. Because document disclosure and compelled testimony are generally very much constrained in Russian civil proceedings, there were no reasons historically to develop broad guidance on professional confidentiality. Nonetheless, it is well established that both advokats and non-advokat lawyers cannot disclose information related to their representation of clients' interests in proceedings, even to disclose the information of former clients to non-clients during court disputes.

I declare, under penalty of perjury under United States law, that the foregoing is true and correct to the best of my knowledge.

Executed on October 29, 2018, in St. Petersburg, Russia

[signature]

_____

Mikhail Z. Schwarts

---

[13] And even when a production order is issued, the penalty for non-compliance is very small: Russian commercial courts may award a penalty up to RUR 2,500 (approx. USD 42) for individuals; RUR 5,000 (approx. USD 83) for officials and RUR 100,000 (approx. USD 1,667) for legal entities (APC RF Article 119(1) (Exhibit 16)).

**В ФЕДЕРАЛЬНЫЙ ОКРУЖНОЙ СУД СОЕДИННЫХ ШТАТОВ ЮЖНОГО ОКРУГА НЬЮ-ЙОРКА**

————————————————————— X

*В отн.:* ЗАЯВЛЕНИЕ HULLEY : 
ENTERPRISES LTD., YUKOS : 
UNIVERSAL LTD., И VETERAN : 
PETROLEUM LTD., О ВЫДАЧЕ : 
ПРИКАЗА СОГЛАСНО § 1782 РАЗДЕЛА : 
28 КОДЕКСА СОЕДИНЕННЫХ :      Дело (проч.) No. 18-mc-435 
ШТАТОВ НА ИСТРЕБОВАНИЕ : 
ИНФОРМАЦИИ ДЛЯ : 
ИСПОЛЬЗОВАНИЯ В ИНОСТРАННОМ : 
СУДЕБНОМ РАЗБИРАТЕЛЬСТВЕ : 

     : 

     : 

     : 

     : 

————————————————————— X

## ЗАЯВЛЕНИЕ
### ПРОФЕССОРА МИХАИЛА ЗИНОВЬЕВИЧА ШВАРЦА

Я, профессор МИХАИЛ ЗИНОВЬЕВИЧ ШВАРЦ, заявляю, в соответствии с параграфом 1746 Раздела 28 Кодекса Соединенных Штатов Америки, о следующем:

1. Я с 1995 года обладаю правом на осуществление деятельности в качестве юриста в России, и имею статус адвоката. Я являюсь профессором и исполняющим обязанности заведующего кафедрой гражданского процесса в Санкт-Петербургском государственном университете. Я читаю лекции по курсам гражданского процесса, арбитражного процесса, административного судопроизводства, исполнительного производства и нотариата. Также я являюсь управляющим партнером адвокатского бюро «Шварц и Партнеры». Основное место в моей частной практике занимает ведение сложных

гражданских и коммерческих судебных дел, а также консультирование по различным вопросам российского законодательства, в том числе процессуального. Я выступал в качестве эксперта по российскому праву в высших судебных инстанциях в России и готовил экспертные заключения для российских и иностранных процессов. Я являюсь членом Научно-консультативного совета при Верховном Суде РФ. Мое резюме приведено в Приложении 1.

2. Я представляю настоящее Заявление в связи с поданными на основании § 1782 Раздела 28 Кодекса Соединенных Штатов в Федеральный окружной суд Соединенных Штатов Южного округа Нью-Йорка и в окружной суд Восточного округа Пенсильвании заявлениями бывших акционеров ЮКОСа - компаний Hulley Enterprises Ltd., Yukos Universal Ltd. и Veteran Petroleum Ltd. (совместно «Заявители») о выдаче разрешений на вызов по повесткам White & Case, LLP[1], г-на Хью Верриера, Председателя White & Case, LLP и Партнера офиса этой фирмы в г. Нью-Йорк, и г-жи Александры Рутштейн, российского юриста, которая работала в офисе White & Case в Москве. Вызовы по повесткам Заявителей направлены на сбор доказательств, которые могут быть использованы в деле № 200.197.079/01 по иску компаний Hulley Enterprises Ltd. («**Hulley**»), Yukos Universal Ltd. («**Yukos Ltd.**») и Veteran Petroleum Ltd. («**Veteran**») к Российской Федерации, которое в настоящее время рассматривается в Апелляционном суде г. Гаага. Насколько мне известно, я независим по отношению к участникам указанных судебных процессов. Суждения, выраженные в настоящем Заявлении, основываются исключительно на моих знаниях и опыте. Мое вознаграждение не зависит от содержания настоящего Заявления или результатов судебных разбирательств. По информации, полученной мной от доверителя, ни Hulley, ни Veteran, ни Yukos Ltd. не были клиентами фирмы White & Case LLP, и что Заявители ходатайствуют о разглашении документов других определенных клиентов White & Case LLP.

3. Я ознакомился с представленными повестками, постановлением о производстве обыска в компании White & Case от 16 мая 2007 года, протоколом обыска в помещении компании White & Case от 30 мая 2007 года, правовыми позициями и Заявлением д-ра И.В. Рачкова, представленными в

---

[1] Насколько я понимаю, White & Case LLC является отдельным, но аффилированным лицом, которое управляет офисом в Москве. При употреблении в настоящем Заявлении просто слов «White & Case» я имею ввиду разные фирмы White & Case, без намерения показать, что организационно-правовая форма этих фирм не имеет значения.

указанные выше суды Заявителями в поддержку своих заявлений. Меня попросили прокомментировать следующие вопросы в соответствии с российским законодательством:

(а) обязаны ли юристы, не обладающие статусом адвокатов, сохранять конфиденциальность документов (файлов) в отношении информации, касающейся работы, выполненной для своих бывших клиентов, и не раскрывать ее лицам, не являющимся клиентами;

(б) применяется ли обязательство юриста о сохранении конфиденциальности к работе, связанной с вопросами по сопровождению сделок или консультациями, а также с представительством интересов клиента в суде или споре;

(в) запрещают ли юристу, вызванному для дачи свидетельских показаний, обязательства по сохранению конфиденциальности перед бывшими клиентами, сообщать суду об информации, а равно о характере и содержании работы, выполненной юристом для бывшего клиента;

(г) защищены ли коммуникации между бывшими клиентами фирмы White & Case, фирмой White & Case и ее юристами, включая г-на Хью Верриера и г-жу Александру Рутштейн, а также документы, разработанные юристами для этой фирмы в связи с их работой в интересах бывших клиентов, от раскрытия по российскому праву лицам, не являющимся клиентами фирмы?

## I.   ОБЩАЯ ИНФОРМАЦИЯ О РОССИЙСКОЙ ПРАВОВОЙ СИСТЕМЕ

4. Российская правовая система не относится к системе общего права, включает в себя национальные писаные нормы права и международно-правовые обязательства. В статье 15 Конституции установлено, что эта система включает в себя Конституцию, законы и подзаконные правовые акты, а также общепризнанные принципы, нормы международного права и международные договоры Российской Федерации. По юридической силе законы в России также имеют свою иерархию, которая выглядит следующим образом: Конституция РФ, федеральные конституционные законы, а затем федеральные законы. К федеральным законам относятся, в частности, Гражданский и Гражданский процессуальный кодексы, Уголовный кодекс, Кодекс об административных правонарушениях. Этот принцип отражен в тексте Конституции 1993 года, в том числе, в части 2 статьи 15, части 3 статьи 90 и части 1 статьи 115. Указанная иерархия основана на доктрине разделения

3

властей (отражена в статье 10), верховенство федеральных законов (отражено в части 2 статьи 4) и принципе демократического, правового государства (отражен в части 1 статьи 1). Данная правовая система не основывается на доктрине *судебного прецедента*.

5. Российская судебная система состоит из судов общей юрисдикции (разрешают уголовные и гражданско-правовые дела, не связанные с коммерческой деятельностью) и арбитражных (экономических) судов, которые занимаются в основном разрешением экономических споров и других дел, возникающих между предпринимателями и юридическими лицами. Высшей инстанцией в российской судебной системе является Верховный Суд. Процессуальные отношения в рамках гражданских судебных споров регулируются Арбитражным процессуальным кодексом («**АПК РФ**») и Гражданским процессуальным кодексом («**ГПК РФ**»).[2]

6. Еще одним высшим судебным органом является Конституционный Суд, который разрешает дела о соответствии российского законодательства Конституции. Решения Конституционного Суда Российской Федерации являются обязательными для всех российских судов.

7. В настоящем Заявлении я периодически комментирую или ссылаюсь на решения российских судов по конкретным делам и публикации по рассматриваемым здесь вопросам.[3]

## II.    РОССИЙСКОЕ ЗАКОНОДАТЕЛЬСТВО, РЕГУЛИРУЮЩЕЕ ПРАВОВОЙ РЕЖИМ ИНФОРМАЦИИ, ПОЛУЧЕННОЙ ЮРИСТОМ В СВЯЗИ С ОКАЗАНИЕМ ЮРИДИЧЕСКОЙ ПОМОЩИ

**A. Российское законодательство предоставляет освобождение от дачи показаний любому лицу, представляющему интересы клиента в судебном разбирательстве, независимо от того, имеется у такого лица статус адвоката, или нет.**

8. Российское процессуальное законодательство прямо и недвусмысленно запрещает допрашивать представителей по гражданскому и иному делу об обстоятельствах, которые стали им известны в связи с

---

[2] Копия статей АПК РФ, цитируемых в настоящем Заявлении, прилагается в качестве Приложения 2. Копия статей ГПК РФ, цитируемых в настоящем Заявлении, прилагается в качестве Приложения 3.
[3] Поскольку вопросы, возникшие в рамках настоящего дела, касаются коммерческих лиц, я уделяю основное внимание судопроизводству и практике российских арбитражных судов, лишь иногда ссылаясь на практику судов общей юрисдикции.

исполнением обязанностей представителей (пункт 1 части 3 статьи 69 ГПК РФ, часть 5 статьи 56 АПК РФ). В частности, в части 5 статьи 56 АПК РФ предусмотрено, что определенные лица не могут быть допрошены в качестве свидетелей, среди них «представители по гражданскому и иному делу - об обстоятельствах, которые стали им известны в связи с исполнением обязанностей представителей». В ГПК содержатся аналогичное правило и запрет на то, чтобы свидетельские показания давали представители по гражданскому или административному делу, об обстоятельствах, которые стали им известны в связи с исполнением обязанностей представителя. Данные положения двух процессуальных кодексов являются почти одинаковыми.

Важно понимать, что в гражданском и арбитражном судопроизводстве в Российской Федерации представителем лица, участвующего в деле, может быть любое дееспособное лицо, в том числе, юрист[4], обладающее необходимыми полномочиями (ст. 49 ГПК РФ, ст. 60 АПК РФ), требования наличия высшего юридического образования или наличия статуса адвоката к нему не предъявляется.

Для предоставления иммунитета, предусмотренного пунктом 1 части 3 статьи 69 ГПК РФ, частью 5 статьи 56 АПК РФ, необходимо лишь, чтобы то или иное лицо выполняло функции *представителя* по гражданскому или иному делу.

9. Из приведенных выше положений следует, что свидетельский иммунитет, предусмотренный процессуальными кодексами, распространяется не только на адвокатов, но на любое иное лицо, выступающее в качестве представителя, имеющего надлежащие полномочия.

Поэтому, признаваемый законом режим конфиденциальности имеет коммуникация любого представителя, имеющего надлежащие полномочия, с его клиентом, а не только коммуникация «адвокат – клиент».

10. Этот иммунитет призван защищать конфиденциальность коммуникаций между клиентом и представителем, имеющим надлежащие

---

[4] Для получения статуса адвоката и членства в адвокатской палате юрист должен иметь высшее юридическое образование либо ученую степень по юридической специальности, стаж работы по специальности не менее двух лет либо пройти стажировку в адвокатском образовании, сдать квалификационный экзамен. На практике основное отличие между юристами и адвокатами проявляется в том, что только адвокаты могут представлять клиентов в уголовном процессе (пункт 1 статьи 9 Закона «Об адвокатской деятельности и адвокатуре в Российской Федерации»).

полномочия; и он распространяется как на устные показания, так и на документы и переписку. Данное мнение подтверждается положениями закона.

11. Понятие «свидетельствовать», предусмотренное АПК РФ и ГПК РФ, идентично понятию, предусмотренному Конституцией РФ, и охватывает любые коммуникации между представителями и клиентами. Это согласуется с выводами Конституционного Суда, которые применимы к даче свидетельских показаний, о том, что право не свидетельствовать против самого себя распространяется на предоставление документов и иных сведений.[5]

12. Как следствие, запрет требовать предоставления документов, содержащих информацию, полученную в ходе осуществления коммуникации «клиент – адвокат» распространяется на любого юриста, в том числе и не являющегося членом адвокатской палаты (т.е. не имеющего статус адвоката). Другими словами, свидетельский иммунитет юриста, оказывающего правовую помощь, включает не только запрет подвергать его допросу в судебном заседании, но и запрет истребовать от него любые носители, которые содержат информацию, доверенную ему в связи с принятием им на себя поручения по оказанию юридической помощи, в первую очередь документы, иные письменные носители, аудиозаписи, видеозаписи и т.п.

Настоящее утверждение подтверждается следующим:

12.1. Как отметил Конституционный Суд РФ, конфиденциальность является неотъемлемым элементом права на получение юридической помощи, гарантированного Конституцией РФ.

12.2. Конституционный Суд также признал, что нельзя произвольно проводить разграничение между адвокатами и юристами, не обладающими таким статусом, и не согласился с утверждением о том, что только адвокаты могут представлять юридических лиц в арбитражных судах.[6]

---

[5] Постановление Конституционного Суда Российской Федерации от 25 апреля 2001 г. № 6-П (Приложение 4). Этот запрет установлен в статье 51 Конституции РФ: "Никто не обязан свидетельствовать против себя самого, своего супруга и близких родственников, круг которых определяется федеральным законом" (Приложение 5).

[6] Постановление Конституционного Суда Российской Федерации от 16 июля 2004 г. № 15-П (Приложение 6). См. также Определение Конституционного Суда РФ от 08.11.2005 № 439-О (Приложение 7) (в нем отмечено, что конфиденциальность отношений «адвокат-клиент» является неотъемлемой частью права на получение юридической помощи в России). Кроме того, в статье 6 Кодекса профессиональной этики адвоката (Приложение 8) предусмотрено, что адвокатской тайной являются не только сведения, полученные адвокатом от доверителей, но любая информация о

Если закон допускает к оказанию правовой помощи, в том числе к ведению судебных дел в качестве представителей, лиц, не являющихся адвокатами, то правовое положение выбравших такого юриста клиентов не должно отличаться от правового положения тех граждан и компаний, которые доверили представление своих интересов адвокатам. Иное нарушало бы (a) запрет вводить различия в правовом положении лиц, принадлежащих к одной категории, которые не имеют объективного и разумного оправдания (запрет различного обращения с лицами, находящимися в одинаковых или сходных ситуациях), неоднократно провозглашенный Конституционным Судом РФ (смотрите, например, Постановление Конституционного Суда РФ от 10 февраля 2015 № 1-П «По делу о проверке конституционности части 6 статьи 43 Федерального закона «О полиции» в связи с жалобой гражданина П.Ф. Юхименко»[7]), (b) требование равного отношения к представителям, имеющим надлежащие полномочия, и запрет закрепления привилегированного положения адвокатов по отношению к другим частнопрактикующим представителям, на которое прямо указал Конституционный Суд РФ в Постановлении от 16 июля 2004 № 15-П «По делу о проверке конституционности части 5 статьи 59 Арбитражного процессуального кодекса Российской Федерации в связи с запросами Государственного Собрания - Курултая Республики Башкортостан, Губернатора Ярославской области, Арбитражного суда Красноярского края, жалобами ряда организаций и граждан» (пункт 4).

**В. Защита информации, предоставляемая по российскому закону, применяется ко всем видам юридических услуг.**

13. Конфиденциальность коммуникации юриста и клиента применяется ко всем видам представительства, не только к представительству в гражданском или арбитражном судах. И, как показано выше, она защищает файлы клиента от раскрытия лицам, не являющимся клиентами, и предоставляет свидетельский иммунитет.

14. Защита конфиденциальной информации, предусмотренная в статье 8 Закона «Об адвокатской деятельности и адвокатуре в Российской Федерации», применяется к «любым сведениям, связанным с оказанием юридической помощи». Безусловно, такие любые сведения включают информацию, полученную лицом, оказывающим юридические услуги, при подготовке

---

доверителе, которая стала известна адвокату в процессе оказания юридической помощи, все адвокатское производство по делу и сам факт обращения к адвокату.

[7] Постановление Конституционного Суда РФ от 10 февраля 2015 г. № 1-П (Приложение 9).

судебных документов и оказании иных юридических услуг, не связанных с судебными разбирательствами.

В свете выводов, сделанных Конституционным Судом по вопросу о равенстве адвокатов и юристов, не обладающих статусом адвоката, в рамках частных разбирательств, иммунитет *представителя*, предусмотренный АПК РФ и ГПК РФ, должен распространяться на все рекомендации и консультации, связанные с оказанием правовой помощи.

Таким образом, для целей части 5 статьи 56 АПК РФ и части 3 статьи 69 ГПК РФ, работа *«представителя»* не сводится исключительно к выступлению в судебных заседаниях от имени клиентов.

См. решение Первомайского районного суда г. Новосибирска от 19.02.2015 по делу № 2-17/2015 (Приложение 10) (предоставление иммунитета представителя лицу, которое не выступало в суде, но занималось подготовкой искового заявления). Также см. Комментарий к Арбитражному процессуальному кодексу Российской Федерации (постатейный) (под ред. В.В. Яркова) (3-е издание, 2011 год), комментарии к части 5 статьи 56 (Приложение 11) (из него следует, что такой же подход используется при разбирательствах в арбитражных судах).

15. Я не знаю ни одного дела, в рамках которого суд по гражданскому делу – по ходатайству лица, не являющегося клиентом - вынес бы определение об истребовании письменных материалов, включая переписку с клиентом в связи с представление интересов текущего и/или бывшего клиента по спору или оказанием иной юридической помощи.

16. Мне неизвестно ни об одном деле, получившем широкую огласку, в котором внешний юридический консультант из иностранной юридической фирмы был бы вызван по ходатайству лица, не являющегося клиентом, для дачи показаний против воли своего клиента, или в котором его бы обязали предоставить лицу, не являющемуся клиентом, документы, связанные с представлением интересов клиента в гражданском споре или оказанием иной юридической помощи.

17. Д-р Рачков заявляет о том, что фирма «White & Case сама признала, что адвокатская тайна не распространяется на истребуемые в данном деле документы», когда она раскрыла документы правительственному следственному органу, «не потребовав судебного решения» в мае 2007 года.

Возможно и так, но это совершенно не имеет отношения к данному делу. Как поясено выше, не только «адвокатской тайной» защищается

конфиденциальность информации и коммуникаций представителя, имеющего надлежащие полномочия, со своими клиентами.

Фирма White & Case не могла рассматривать себя в качестве «адвокатского образования», имеющего право требовать судебного решения на основании пункта 3 статьи 8 Федерального закона «Об адвокатской деятельности и адвокатуре в Российской Федерации». Однако, это не означает, что в фирме White & Case не было представителей, обладающих надлежащими полномочиями, которые имеют отдельный вид применимого к юристам иммунитета и предусмотренного в пункте 1 части 3 статьи 69 ГПК РФ, части 5 статьи 56 АПК РФ.

## III. ИСТРЕБУЕМЫЕ ДОКУМЕНТЫ ВОЗМОЖНО ПОДЛЕЖАТ ЗАЩИТЕ ПО РОССИЙСКОМУ ПРАВУ

18. В качестве возражений относительно выводов д-ра И.В. Рачкова в его Заявлении, привилегия отношений «юрист-клиент» применяется и, по моему мнению, защищает от раскрытия все отвечающие соответствующим требованиям к такой защите коммуникации между надлежащим образом уполномоченными представителями и их клиентами.

Утверждения д-ра Рачкова об обратном не верны, в том числе, по изложенным ниже причинам.

А) Конфиденциальность является привилегией клиента, а не юриста.

Б) Конституционный Суд РФ неоднократно обращал внимание на запрет введения различий между адвокатами и другими имеющими надлежащие полномочия представителями, которые не имеют объективного и разумного оправдания.

В) Конституционный Суд недвусмысленно указывал, что обязательство государства по обеспечению для своих граждан квалифицированной юридической помощи требует создания «надлежащих условий гражданам для реализации этого конституционного права, а лицам, оказывающим юридическую помощь, *в том числе адвокатам*, - для эффективного осуществления их деятельности».

9

## IV. РОССИЙСКОЕ ПРАВО ТАКЖЕ ПРИЗНАЕТ ДОГОВОРНУЮ КОНФИДЕНЦИАЛЬНОСТЬ

19. Российское право признает и обеспечивает принудительное исполнение условиям о соблюдении конфиденциальности, предусматриваемым в договорах на оказание юридических услуг[8].

20. Федеральный закон от 27 июля 2006 г. № 149-ФЗ «Об информации, информационных технологиях и защите информации» регулирует права доступа к соответствующей информации. Настоящий Закон, в частности, устанавливает определение «конфиденциальной информации» и делит информацию в зависимости от категории доступа к ней, а именно, общедоступную информацию и информацию, доступ к которой ограничен федеральными законами (информация с ограниченным доступом), и другую.

Д-р Рачков неправильно заявляет о том, что защите подлежит лишь информация, относящаяся к понятию коммерческой тайны или подобному. Ограничению доступа к информации посвящена статья 9 этого закона[9]. В этой статье, в частности, устанавливается, что любая информация, полученная гражданами (физическими лицами) в ходе исполнения такими лицами их профессиональных обязанностей, или организациями при осуществлении определенных видов предпринимательской деятельности (профессиональная тайна), будет подлежать защите, если обязательства по хранению конфиденциальной информации налагаются на таких лиц в соответствии с федеральными законами (пункт 5). Данный закон применяется к информации, содержащейся в любой форме, в том числе, сообщенной письменно или устно[10].

21. Д-р Рачков утверждает, что суды имеют право истребовать конфиденциальную информацию, раскрытие которой запрещено договором (п.17 Заключения д-ра Рачкова). Но судебное решение, на которое он ссылается, говорит об истребовании информации у стороны. White & Case не является заинтересованной стороной; это юридическая фирма, связанная обязательствами по договорной конфиденциальности. И, как я расскажу в следующем разделе, российские суды предъявляют существенные требования

---

[8] См. например, статью 307, а также статьи 4, 154, 307, 309, 422 Гражданского кодекса РФ (Приложение 12).

[9] Копия статьи 9 Федерального закона «Об информации, информационных технологиях и защите информации» приведена в Приложении 13.

[10] См. также статью 2, часть 3 статьи 5, часть 1 статьи 6, часть 3 статьи 6, пункты 1 и 3 части 4 статьи 6 Федерального закона от 27 июля 2006 г. № 149-ФЗ «Об информации, информационных технологиях и защите информации» (Приложение 14).

к ходатайствам об истребовании доказательств, чтобы получить подобное предоставление документов от заинтересованной стороны.

## V. ГРАЖДАНСКОЕ ПРОЦЕССУАЛЬНОЕ ПРАВО НЕ ДОПУСКАЕТ ИСТРЕБОВАНИЯ ДОКАЗАТЕЛЬСТВ ПО ХОДАТАЙСТВАМ, АНАЛОГИЧНЫМ ПОВЕСТКАМ ЗАЯВИТЕЛЕЙ

22. Являясь страной романо-германской правовой семьи, в России не допускается широкое истребование доказательств. Напротив, лицо, участвующее в деле, должно доказать обстоятельства, которые являются основанием для истребования документов у противоположной стороны по ходатайству заявителя.

23. Существует ряд установленных законом ограничений в отношении такого ходатайства. Одно из таких ограничений заключается в конфиденциальности отношений между юристом и клиентом (будь то в форме адвокатской тайны или свидетельского иммунитета представителя), которая рассматривалась выше. Имеются и другие ограничения, например, российское законодательство предусматривает, что определение о предоставлении доказательств выносится только в тех случаях, когда в ходатайстве истребуемое доказательство четко увязывается с теми или иными вопросами, имеющими значение для дела (статья 67 АПК РФ).

24. Кроме того, российский суд требует, чтобы сторона, запрашивающая доказательства, конкретно идентифицировала их в ходатайстве. Российское право не допускает попыток выудить информацию: суд отклонит ходатайство стороны об истребовании доказательств, основанное лишь на предположении о наличии некоего документа, который может доказывать те или иные факты, которые надеется установить такая сторона.[11]

25. В силу упомянутых выше ограничений истребование доказательств встречается в российской судебной практике редко.[12] По официальным статистическим данным, опубликованным Верховным Судом Российской Федерации, за весь период 2015-2016 гг. арбитражные суды рассмотрели в

---

[11] Постановление Девятого арбитражного апелляционного суда от 30 ноября 2011 г. по делу № А40-47475/11-162-263 (Приложение 15).

[12] Согласно позиции некоторых судов, сторона не имеет права требовать от противоположной стороны предоставления документов, поскольку это нарушало бы принцип состязательности и обязанность каждой из сторон самостоятельно доказывать обстоятельства, на которые она ссылается.

11

совокупности 3 102 789 дел и вынесли всего лишь 653 определения о наложении штрафов за непредоставление доказательств.[13]

26. Исходя из моего обширного опыта изучения и применения норм российского гражданского и арбитражного процессуального законодательства, я считаю, что ни один российский суд, основываясь на российском законодательстве, не вынес бы определения об истребовании документов, запрашиваемых Заявителями. Я также считаю, что ограниченный характер раскрытия доказательств, как он сложился к настоящему времени в гражданском судебном процессе в России, и нынешнее состояние российского законодательства о профессиональной тайне, взаимосвязаны. Поскольку истребование документов и показаний в рамках гражданского судопроизводства в России в целом носит очень ограниченный характер, то исторически не было причин вырабатывать общие правила по вопросу профессиональной конфиденциальности. Тем не менее, общепризнано, что ни адвокаты, ни юристы (не обладающие статусом адвоката) не могут разглашать информацию, связанную с представлением интересов клиентов в разбирательствах – даже раскрывать информацию своих бывших клиентов для лиц, не являющихся клиентами, в судебных спорах.

Я настоящим заявляю, осознавая ответственность за дачу заведомо ложных показаний по законодательству США, что, насколько мне известно, всё изложенное выше является верным и точным.

Подписано 29 октября 2018 года в Санкт-Петербурге, Россия.

М.З. Шварц

---

[13] И даже если определение было вынесено, штраф за его несоблюдение крайне незначителен: российские арбитражные суды могут наложить на физическое лицо штраф в размере, не превышающем 2 500 руб. (около 42 долл. США); на должностное лицо – в размере, не превышающем 5 000 руб. (около 83 долл. США); и на юридическое лицо – в размере, не превышающем 100 000 руб. (около 1 667 долл. США) (часть 1 статьи 119 АПК РФ (Приложение 16)).